HOBSON v. IMPERIAL TOBACCO CO. OF GREAT BRITAIN & IRELAND, Limited.

(Circuit Court of Appeals, Fourth Circuit. February 19, 1917.)

No. 1467.

PATENTS ☞328—INFRINGEMENT—PROCESS OF TREATING TOBACCO.

The Hobson patent, No. 642,609, for a process of treating tobacco to flavor the same, *held* not infringed.

Appeal from the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Suit in equity by William Daniel Hobson against the Imperial Tobacco Company of Great Britain & Ireland, Limited. Decree for defendant, and complainant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. C. Moon and G. E. Caskie, both of Lynchburg, Va. (W. M. Smith and B. B. Woodson, both of Cumberland, Va., Caskie & Caskie, of Lynchburg, Va., E. Warren Wall, of Farmville, Va., C. E. Doyle, of Washington, D. C., and Moon & Moon, on the brief), for appellant.

John M. Coit, of Washington, D. C. (J. Tinsley Coleman, of Lynchburg, Va., and John Pickrell, of Richmond, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. Hobson instituted this suit in equity in the court below for alleged infringement of his patent, No. 642,609, for an improved process of treating tobacco, granted February 6, 1900. The court below dismissed his bill. The improved process claimed in this patent is:

"First, in curing leaf tobacco; secondly, drying the same, and subsequently imparting a flavor thereto by simultaneously commingling smoke and steam in a closed receptacle and subjecting the cured and dried leaf, within such receptacle, to the combined and simultaneous action of the commingled agents, whereby the steam opens the pores of the dried and cured leaf and the smoke permeates the latter."

In practical use and application of this patented process, Hobson took a box, having an open top, divided it into two divisions or chambers by means of a perforated partition or false bottom. In the upper chamber he supported the tobacco leaf, to be treated, by hangers or strips, having terminal hooks engaging the upper edges of the box at opposite sides thereof, and when the tobacco leaf was so placed in the box, he closed the open top thereof by an arched cover, in order to confine the smoke and steam, which cover could be readily lifted in order to remove the leaves when treated. The lower division or chamber he constituted a fire box or smoke chamber, fitting it with a suitable door and an ordinary draft register to supply the fuel with sufficient air to promote the combustion necessary for the production of smoke. He preferred to use oak or hickory, but claims any suitable variety of wood can be used in this fire box or smoke chamber. The smoke thus created in this fire box or smoke chamber is designed to pass upward, through the perforated partition or false bottom, into the upper or tobacco containing chamber into which, at the same time, he introduced from the outside steam by means of a steam inlet pipe.

It is at once apparent from an examination of the patent claim that its practical application must, if upheld at all, be confined to very narrow limits. The use of heat, water evaporation and smoke in curing tobacco has long been in use by the farmers in securing the condition of the product required to make it at all salable. The use of the primary elements, heat, smoke, and steam, are of course common. The claim, therefore, if upheld, must be because of the new and novel means or appliances by which they are conjoined and applied. However, no matter what views we may entertain as to the original validity of the patent, as we view the case, it becomes unnecessary for us to pass upon that question. It expired the very day this cause was sub-

mitted to us. The defendant denies infringement. Its counsel, in their brief, correctly describe its method and operation to be as follows:

"It has an annex to its factory at Lynchburg, built of brick and steel with a composition roof, about 90 feet long, 25 to 30 feet wide, and 25 to 30 feet high. It is divided in the middle by a fire wall, and there are four furnaces for each of the two divisions, two furnaces on each side of each division. These furnaces extend from the walls into the annex at the ground or floor for a distance of about 6 or 7 feet; fuel being placed in them from the outside through an entrance flush with the walls of the building. The two furnaces on each side of a division are connected on the inside to a flue extending the length of the compartment, so that the smoke and products of combustion in the furnaces pass into the flues. These flues inside the compartment have at intervals of three or four feet openings about 8 or 10 inches in diameter to permit the smoke and products to pass into the compartments; the opening being covered with wire cloth to prevent sparks passing into the compartment. In the ground between and parallel to the two flues in each compartment is a concrete trough, about 14 or 15 inches deep and 8 or 10 inches wide, which is adapted to contain water, and it is provided with an automatic valve to control the supply of water. Along the bottom of the trough there is a perforated steam pipe, which may be supplied with steam from the boilers. There are valves outside the building to cut off or control the supply of water and steam at will. Each compartment is provided with numerous ventilators in its upper part."

It fully appears from the evidence that neither the apparatus nor the processes are the same as plaintiff's. The tobacco in this annex is not treated in "a closed receptacle"; nor is it subjected to the "combined and simultaneous action of" commingled smoke and steam. No steam is directly used. It is simply discharged under the water occasionally for the purpose of increasing water evaporation. But more important than this is the fact that defendant's process takes the tobacco for treatment at a stage before Hobson's process is applicable. In other words, the defendant's process takes the tobacco, only partially cured by the farmer, before it is dried, hangs it on trucks which are run into this annex on iron tracks, at different levels, and for two days subjects it to a warm, smoky atmosphere, thereby completing the curing operation, only partially done by the farmer, and then, by means of a machine, a Proctor drier, dries it finally to the state required for shipment. On the other hand, Hobson's process designs to take the tobacco only after the full curing of it for shipment has been secured, and, for the sole purpose of securing the desired flavor, subjects it to a "last treatment prior to its being placed in a hogshead or package for shipment," which last treatment, it is stated, can be accomplished by him in a few minutes.

It by no means follows that, because the defendant, by common and well-known methods, in completing the partial curing necessary to be done, secures this flavor desired, he thereby infringes Hobson's process. We are clear that it does not so infringe it, and that the court below rightly held that his bill should be dismissed.

Affirmed.